IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

UNITED STATES OF AMERICA                                         PLAINTIFF

   VS.                        CASE NO. 3:17-cr-30010-PKH-MEF-7

JULIA NICOLE HOLLEY                                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed June 4, 2018. (ECF No. 282). The United States filed its Response on July 24, 2018. (ECF No. 300). Despite obtaining leave and an extension of time to file a reply (ECF No. 303), the Defendant has not filed a reply. The matter is ready for Report and Recommendation.

## I. Background

On July 26, 2017, a multi-party, multi-count Indictment was issued charging the Defendant, Julia Nicole Holley ("Holley"), with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count One), and two counts of using a communication facility, namely a cell phone, in committing, causing and facilitating a felony drug offense, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 843(b) (Counts Thirteen and Fourteen). (ECF No. 1). Holley was arrested on August 18, 2017 (ECF No. 74), and she appeared for arraignment on August 21, 2017, at which time she entered a not guilty plea to the Indictment. (ECF No. 30). The Court appointed Christy Comstock ("Comstock"), a CJA Panel attorney, to represent Holley. (ECF No. 30; Text Only Order entered August 21, 2017). Comstock requested discovery in open court on behalf of Holley. (ECF No. 30).

-1-

On October 13, 2017, Holley appeared before the Hon. Mark E. Ford, Magistrate Judge, for a change of plea hearing. (ECF No. 99). Pursuant to a written Plea Agreement (ECF No. 100), Holley pleaded guilty to Count One of the Indictment charging her with conspiracy to distribute methamphetamine. (ECF No. 99). A Report and Recommendation that Holley's guilty plea be accepted and the Plea Agreement tentatively approved, subject to final approval at sentencing, was filed on October 13, 2017. (ECF No. 102). An Order adopting the Report and Recommendation *in toto* was entered by the Hon. P. K. Holmes, III, Chief District Judge, on October 17, 2017. (ECF No. 106).

An Initial Presentence Investigation Report ("PSR") was prepared by the United States Probation Office on December 12, 2017. (ECF No. 158). On December 22, 2017, both Holley and the Government advised that they had no objections to the PSR. (ECF Nos. 167, 170).

On December 27, 2017, a Final PSR was submitted to the Court. (ECF No. 171). The Final PSR determined that Holley was accountable for 184.27 grams of a mixture of methamphetamine and, as a result, Holley's Base Offense Level was determined to be 24. (ECF No. 171, ¶¶ 50, 55). This was decreased two levels for specific offense characteristics because Holley met the "safety valve" requirements of U.S.S.G. § 5C1.2 (ECF No. 171, ¶¶ 50, 56), resulting in an Adjusted Offense Level of 22 (ECF No. 171, ¶ 60). After a three level reduction for acceptance of responsibility, Holley's Total Offense Level was determined to be 19. (ECF No. 171, ¶¶ 62-64). Holley's criminal history resulted in a total criminal history score of zero, placing her in Criminal History Category I. (ECF No. 171, ¶ 73). The statutory maximum term of imprisonment for the offense of conviction is 20 years. (ECF No. 171, ¶ 106). Based upon a Total Offense Level of 19 and a Criminal History Category of I, Holley's advisory guideline range was determined to be 30 to 37 months

imprisonment.  (ECF No. 171, ¶ 107).

Holley appeared for sentencing on March 1, 2018.  (ECF No. 261).  The Court made inquiry that Holley was satisfied with her counsel, final approval of the Plea Agreement was expressed, and the Court imposed a below-guidelines sentence of 18 months imprisonment, three years supervised release, no fine, and a $100.00 special assessment.  (*Id.*).  Judgment was entered by the Court on March 1, 2018.  (ECF No. 266).  The Court's Statement of Reasons set forth that the Court adopted the PSR without change; that no count of conviction carries a mandatory minimum sentence; that the Court departed below the guideline range upon the government's motion for departure for Holley's substantial assistance; and, that the Court determined a downward variance was warranted due, in part, to the history and characteristics of the Defendant.  (ECF No. 267).

Holley did not pursue a direct appeal from the Judgment.

On June 4, 2018, Holley filed her *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion").  (ECF No. 282).  The Motion raises four grounds for relief, all being claims of ineffective assistance of counsel: (1) counsel was ineffective at the pre-trial stage when she failed to investigate affirmative defenses, failed to ensure that Holley understood all of the elements of the offenses, failed to investigate and/or explain lesser-included offenses, failed to provide Holley with copies of all relevant documents, and failed to properly explain all options so Holley could participate in her defense (ECF No. 282, p. 4); (2) counsel was ineffective at the plea stage when she failed to ensure that Holley received the benefit of the bargain she made with the government, failed to explain that a plea agreement is governed by contract law and that it could be negotiated, and that the Plea Agreement did not contain protections against use of her proffer information against her but did contain a waiver of documents

-3-

that she would have never agreed to (*Id.*, p. 6); (3) counsel was ineffective at sentencing when she failed to raise affirmative defenses, i.e., first offender treatment, failed to raise minimal or minor role adjustment, failed to present a fully developed plan for drug treatment, failed to ensure protected information was not used to calculate Holley's guidelines range, and failed to raise all sentencing arguments (*Id.*, p. 7); and, (4) counsel was ineffective at the appeal stage when she failed to consult with Holley concerning an appeal and did not file a notice of appeal (*Id.*, p. 8).

The United States' Response to the Motion was filed on July 24, 2018.  (ECF No. 300). Holley did not file a reply.

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  A thorough review of Holley's § 2255 Motion and the files and records of this case conclusively shows that Holley is not entitled to relief, and the denial and dismissal of her § 2255 Motion with prejudice without an evidentiary hearing is recommended.

-4-

## A. Legal Standard for Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

-5-

## B.  Validity and Effect of Holley's Guilty Plea

Holley unconditionally pleaded guilty to the offense of conviction.  When a guilty plea is entered by the movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea.  *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973).  As the Court in *Tollett* eloquently observed:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  *He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advise he received from counsel was not within the standards set forth in *McMann*[1].
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings."  *Id*. at 267. (Emphasis added.)

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255.  *See Bass*, 739 F.2d at 406.

---

[1] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

-6-

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *Machibroda v. United States*, 368 U.S. 487, 493 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

In the present case, Holley was represented by experienced defense counsel, Christy Comstock, a CJA Panel attorney, throughout the criminal proceedings. Prior to the change of plea hearing, Comstock had represented Holley at the arraignment (ECF No. 30); she requested discovery on the record at arraignment in compliance with the Court's Pretrial Scheduling Order (ECF No. 40); and, she negotiated a written Plea Agreement with the Assistant United States Attorney prosecuting the case.

Comstock carefully reviewed the Plea Agreement with Holley before obtaining Holley's signature on it; she explained the ramifications of the Plea Agreement to Holley; she believed that Holley understood the Plea Agreement, including what rights were being lost by pleading guilty and what the United States agreed to do in exchange for the guilty plea; and, she believed that Holley's decision to enter into the Plea Agreement was an informed and voluntary one. (ECF No. 32, ¶ 21). The Plea Agreement informed Holley of the count of conviction, being Count One of the Indictment

-7-

(charging Holley with conspiracy to distribute methamphetamine), and the counts to be dismissed. (ECF No. 100, ¶ 1).  Holley acknowledged in the Plea Agreement that she had fully discussed with her counsel the facts of the case and the elements of the crime to which she was pleading guilty; she agreed that she had committed each of the elements of the crime to which she was pleading guilty; and, she admitted the factual basis for the plea.  (ECF No. 100, ¶ 2).  The Plea Agreement advised Holley of her constitutional and statutory rights, including the right to persist in her plea of not guilty.  (ECF No. 100, ¶ 3).  By signing the Plea Agreement, Holley represented that she had read the agreement and had carefully reviewed every part of it with her counsel; that she fully understood the Plea Agreement and was not under the influence of anything that could impede her ability to fully understand it; that no promises, agreements, understandings, or conditions had been made or entered into in connection with the decision to plead guilty except those set forth in the Plea Agreement; that she was satisfied with the legal services provided by her defense counsel in connection with the Plea Agreement and matters related to it; and, that she entered into the Plea Agreement freely, voluntarily, and without reservation, and that her desire to enter a plea of guilty was not the result of any threats or coercion.  (ECF No. 100, ¶ 20).

During the change of plea hearing on October 13, 2017, Holley was sworn on oath and examined about the offense; the Court inquired of Holley about her age and level of education; inquiry was made as to whether Holley was under the influence of alcohol or drugs, and whether she was able to comprehend the proceedings; inquiry was made as to whether Holley was satisfied with her counsel, to which she responded affirmatively; the possible severity of sentence was explained, as well as Holley's constitutional and statutory rights; and, upon such inquiry in open court, the Court determined that Holley's guilty plea to Count One of the Indictment was voluntary and

intelligent, and that there was a factual basis to support the guilty plea. (ECF Nos. 99, 288).

Holley does not specifically allege in her § 2255 Motion that her claims of ineffective assistance of counsel rendered her guilty plea involuntary, unintelligent, and invalid. Instead, she vaguely claims that her counsel failed to investigate unspecified affirmative defenses, failed to ensure that Holley understood all the elements of the offenses, failed to investigate and/or explain lesser included offenses, failed to provide her with copies of all relevant documents, and failed to explain all options to her. (ECF No. 282, p. 4). Contrary to Holley's allegation that Comstock only summarized the Plea Agreement and read only portions of it to her (ECF No. 282, p. 15), Holley explicitly acknowledged by signing the Plea Agreement that she had fully discussed the facts of the case with defense counsel; that she had read the agreement and had carefully reviewed "every part of it" with defense counsel; and, that she was satisfied with the legal services provided by defense counsel "in connection with the Plea Agreement and matters related to it." (ECF No. 100, ¶¶ 2, 20).

Holley also fails to offer any specific details to support her claim that counsel failed to investigate the case or adequately communicate with her regarding the Plea Agreement. She does not, for example, identify any specific affirmative defenses, lesser-included offenses, or other options that counsel allegedly failed to investigate that could have applied to her case. Nor does Holley explain how counsel failed to ensure that she understood all of the elements of the offense when, to the contrary, Holley expressed clear understanding both in the written Plea Agreement she signed and in her representations made to the Court during the change of plea hearing.

Though a § 2255 motion is to be liberally construed, the petition *must assert facts* regarding counsel's performance. *Saunders v. United States*, 236 F.3d 950, 952-53 (8th Cir. 2001). Vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255.

-9-

*Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986).  *See also: Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (solemn declarations in open court carry a strong presumption of verity; subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal); *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (brief, conclusory allegations that failed to cite to the record insufficient to support claims of ineffective assistance of counsel).  Holley has not alleged, nor established in the record, that her decision to plead guilty was not a voluntary and intelligent choice among the alternative courses open to her.  Accordingly, to the extent Holley's § 2255 Motion does not specifically challenge the voluntary and intelligent character of her guilty plea, her claim regarding counsel's conduct leading to the guilty plea is deficient and subject to dismissal.

Since Holley has failed to show that her counsel's performance was deficient regarding this issue, there is no need to address the second *Strickland* prong of prejudice.  *Walker*, 324 F.3d at 1040 (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim).  Even so, Holley has not asserted that, but for her counsel's allegedly deficient performance in failing to investigate the case and communicate with her regarding the Plea Agreement, she would not have pleaded guilty and would have insisted on going to trial.  She has not, therefore, met the prejudice requirement where a guilty plea is challenged.  *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (where a guilty plea is challenged under the second prong of the *Strickland* test the "defendant must show that . . . he would not have pleaded guilty and would have insisted on going to trial).

-10-

### C. No Failure to Ensure Holley Received the Benefit of the Plea Bargain

Holley next claims that her counsel was ineffective at the plea stage and failed to ensure that she received the "benefit of the bargain" to which she had agreed. This claim fails for the reasons that Holley has not shown prejudice, her allegations are vague and conclusory, and the notion that she did not receive the benefit of the plea bargain is simply not true.

As discussed just above, in order to satisfy the prejudice component of *Strickland*, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Despite her allegations that she did not receive the benefit of her Plea Agreement, that she was not told about the negotiations leading to the Plea Agreement, and that nothing in the Plea Agreement protected her from the United States' use of her proffer information against her, Holley never asserts that, but for her counsel's allegedly deficient conduct, she would not have pleaded guilty and would have insisted on going to trial. As such, she has failed to demonstrate prejudice.

Holley vaguely suggests that counsel failed her by not involving her in the plea negotiations and not securing a more favorable plea offer, but she fails to allege specific facts that would support such a claim. In contrast, Comstock's Affidavit states that she met privately with Holley, face to face and with the ability to communicate and review documents, on eight occasions, and during these meetings numerous subjects were discussed, including the charges against Holley, the evidence provided by the United States during discovery, the plea offer made by the United States, and the rights Holley would waive by pleading guilty. (ECF No. 300-1, ¶ 2). Comstock also states that she provided Holley with a copy of the proposed Plea Agreement, and although Holley can read, Comstock read the proposed Plea Agreement to Holley and explained the consequences and benefits.

-11-

(*Id*., ¶ 5).  That this occurred is specifically acknowledged by Holley's representations in the Plea Agreement and her signature on it.  (ECF No. 100, ¶ 20).  Comstock further explains that almost five hours were spent face to face with Holley in September and October 2017, during which they discussed the proposed Plea Agreement, application of the Sentencing Guidelines, and Holley's participation in a proffer interview.  (ECF No. 300-1, ¶ 7).  Following Holley's proffer interview and prior to her change of plea, Comstock states she again reviewed the United States' discovery materials to ensure that Holley was not entitled to argue for a more favorable plea offer based on the evidence related to accountable drug quantity, but she found no basis for such an argument.  (Id., ¶ 8).  Holley then knowingly and voluntarily signed the Plea Agreement on October 1, 2017 (ECF No. 100, p. 11), and she changed her plea to guilty on Count One of the Indictment at a change of plea hearing on October 13, 2017 (ECF No. 99).

During the change of plea, Holley expressed an understanding of the Plea Agreement, the Constitutional rights she was giving up by pleading guilty, and she confirmed that she had no questions about the Plea Agreement prior to stating her intent to go forward and enter a plea of guilty.  (ECF No. 288, pp. 13-15).  The Court found then, as it does now, that Holley was well informed regarding the contents of the Plea Agreement and her counsel's performance in negotiating it and explaining it to her, and that Holley's plea of guilty was knowingly and voluntarily made and supported by an independent basis in fact containing each of the essential elements of the offense of conviction.  (*Id*., at p. 19).

Holley alleges only that "Comstock failed to ensure that Ms. Holley received the benefit of the bargain the government agreed to" (ECF No. 282, p. 6), but she does not allege in her § 2255 Motion what specific benefit(s) of her plea bargain she did not receive at sentencing.  As noted

-12-

above, vague and conclusory allegations, unsupported by specific facts, are not sufficient to state a

ground for relief under 28 U.S.C. § 2255. *See Hollis*, 796 F.2d at 1046; *Blackledge*, 431 U.S. at 74;

*Smith*, 677 F.2d at 41; and, *Bryson*, 268 F.3d at 562.

Moreover, the record makes clear that Holley received the many substantial benefits from

her Plea Agreement at the time of sentencing. After Holley had again expressed satisfaction with

her counsel (ECF No. 289, pp. 2-3), the Court at sentencing recognized the very substantial benefits

Holley received as a result of her Plea Agreement. In giving final approval to the Plea Agreement,

the Court noted that the United States agreed to dismiss Counts Thirteen and Fourteen of the

Indictment, and it found that Holley was eligible for relief pursuant to the "safety valve" provision

of the United States Sentencing Guidelines. (ECF No. 289, pp. 4-5). Pursuant to a stipulation as to

drug quantity in the Plea Agreement (ECF No. 100, ¶ 4), and with that agreed drug quantity then

being reflected in the PSR (ECF No. 171, ¶ 50), the Court found Holley's Base Offense Level to be

24, which was then reduced by two levels pursuant to the "safety valve." (ECF No. 289, p. 5).

The United States also agreed not to object to a recommendation by the United States

Probation Office, or a ruling of the Court, that awarded Holley an appropriate reduction for

acceptance of responsibility, and the government agreed to move for an additional one-level of

reduction if the offense level in the PSR was 16 or greater. (*Id*., ¶ 12). The Court noted this at

sentencing and granted the government's motion for the additional one-level reduction. (ECF No.

289, pp. 5-6). The Court also granted a motion by the United States for a three-level downward

departure due to Holley's substantial assistance to the government by providing truthful, useful, and

timely information regarding other investigations. (*Id*., pp. 8-9). This reduced Holley's offense level

to 16, which when combined with her criminal history category of I, resulted in an advisory

-13-

guidelines range of 21-27 months imprisonment.  (*Id*., p. 9).

The offense level reductions mentioned above are a substantial benefit of the plea bargain Holley made with the United States; and, contrary to Holley's vague and conclusory allegations, the record shows that her counsel ensured that Holley received those benefits at sentencing.  As the government correctly points out, had Holley not entered into the Plea Agreement and been found guilty at trial, her advisory guidelines range would have been 51-63 months imprisonment.  (ECF No. 300, p. 12, n. 3).  The record simply does not support a conclusion that defense counsel failed to ensure that Holley received the "benefit of the bargain," and Holley's second ground for relief should be rejected and dismissed.

### D.  No Ineffective Assistance of Counsel at Sentencing

For her third ground for relief, Holley argues that her counsel failed to raise affirmative defenses, i.e., first offender treatment; failed to seek a minor or minimal role adjustment; failed to present a "FULLY developed plan for DRUG TREATMENT"; failed to ensure that protected information was not used to calculate her guidelines range; and, failed to raise "ALL sentencing arguments."  (ECF No. 282, p. 7).  These allegations do not support a claim for § 2255 relief.

#### 1.  First Offender Treatment

Contrary to her assertion regarding "first offender treatment," Holley did benefit from the "safety valve" provided for in U.S.S.G. § 5C1.2, which requires, among other criteria, that a defendant have no more than one criminal history point.  The "safety valve" thus affords some relief to a first time offender, and Holley benefitted from that relief.

#### 2.  Minor or Minimal Role Adjustment

Holley's counsel did not seek a minor or minimal role adjustment, but her decision not to do

-14-

so cannot be faulted under the facts of this case. A four-level reduction for minimal participation, pursuant to U.S.S.G. § 3B1.2(a), applies to defendants who are "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, cmt. 4; *United States v. Boksan*, 293 F.3d 1056, 1058 (8th Cir. 2002). "This role reduction for minimal participation was intended to be used infrequently, and should be reserved for cases where the defendant does not know or understand the scope of the illegal enterprise or where the defendant's involvement was insignificant." *Boksan*, 293 F.3d at 1058 (internal citations omitted). A two-level reduction for minor participation, pursuant to U.S.S.G. § 3B1.2(b), is appropriate for defendants who are "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. 5; *Boksan*, 293 F.3d at 1058-59.

Holley says she succumbed to drug use to cope with being left alone with all the family and household responsibilities when her husband unexpectedly left to enter the military. (ECF No. 282, p. 13). After losing everything because of addiction, Holley became acquainted with one of her Co-Defendants, Amy Friend-Hagler, who offered encouragement to Holley. Friend-Hagler also confided in Holley that Friend-Hagler's brother, Co-Defendant, Eric Friend, used drugs and associated with "bad people." (*Id*.). Friend-Hagler asked Holley to help Eric Friend obtain drugs for his personal use so he wouldn't have to associate with "those bad people." (*Id*.). Holley then states that she agreed to ask someone she knew, and she set up Eric Friend with her source of supply for methamphetamine. (*Id*.).

Holley's account of "only helping her friend" glosses over the facts. As reported in the PSR, Holley called Friend on April 16, 2017, and during this conversation Friend advised Holley that he would like to obtain four ounces of meth for $800 per ounce, and Friend stated: "I'd like them to

front me four more ounces.  I'll have the money back to them within 48 hours."  (ECF No. 171, ¶ 24).  Holley called Friend again later that day to confirm her ability to provide four ounces at $800 per ounce, and they agreed to meet the next day, April 17, 2017, at Holley's house for the drug transaction.  (*Id*., ¶¶ 26-28).  The morning after that transaction, Friend called Holley and told her to "work on the guys" (referring to Holley's source of supply for meth) to "front some shit," saying "we can move that shit up here."  (*Id*., ¶ 30).  The transaction for four ounces of meth, let alone the discussion of wanting to be fronted an additional four ounces and Friend's statement regarding the ability to "move that shit up here," completely undermines any suggestion that Holley was "only helping" Friend obtain drugs for his personal use.

On April 20, 2017, Holley and Friend agreed to another meth deal to take place in central Arkansas.  (*Id*., ¶ 31).  A series of intercepted communications between Friend and Holley indicated that Holley had been unable to obtain the meth from her source of supply on April 20, 2017, and their meth deal would be delayed until later in the day on April 21, 2017.  (Id., ¶ 38).  Holley then called Friend on April 22, 2017, and she told him that her source of supply had told her "it was bad," so Holley was waiting on more meth.  (Id., ¶ 40).  Holley and Friend continued to stay in touch over the next few days, and these calls related to Holley attempting to obtain meth from a different source of supply in the Little Rock area.  (Id., ¶¶ 41, 42).  On April 28, 2017, Holley called Friend in reference to a new source of supply, and she told Friend: "I talked to him today about prices, and his prices are good comparable and stuff is good quality. So if you still need after we get this taken care of if you need some more then I'll get it.  I'll just do it myself without anyone else being in the middle."  (Id., ¶ 45).

The facts reported in the PSR are undisputed.  "A fact in a PSR to which the defendant has

-16-

not specifically objected is a fact admitted by the defendant." *See United States v. Abrica-Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015) (quoting *United States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006)).

Holley argues she only wanted to help her friend, and "those phone calls ... led to [her] being swept up in an ongoing investigation." (ECF No. 282, p. 13). Such an argument ignores that "numerous decisions have upheld the denial of minor role adjustments to defendants who served as middlemen ... because those participants play a critical role in illicit drug trafficking by directing prospective buyers to sellers who wish to remain hidden from public view." *See United States v. Deans*, 590 F.3d 907, 910 (8th Cir. 2010) (internal quotation marks omitted) (collecting cases). "[M]erely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was deeply involved in the offense." *See United States v. Payne*, 377 F.3d 811, 816 (8th Cir. 2004), *vacated on other grounds*, 543 U.S. 1112 (2005) (internal quotation marks omitted) (quoting *United States v. Bush*, 352 F.3d 1177, 1182 (8th Cir. 2003).

The undisputed facts reveal that Holley made the initial contact with Friend; she then contacted her source of supply for meth and communicated the amount of meth to be sold and its price; she made all the arrangements to facilitate the drug transaction; she allowed her house to be used as the situs of the drug transaction and was present at the moment of the transaction; she continued to communicate with Friend about a second drug transaction; and, when her first source of supply had some quality issues, she made arrangements for another source of supply. These facts show that Holley's role was to distribute methamphetamine, the intended object of the conspiracy, and this is more than sufficient to show Holley's deep involvement in the offense. *See, e.g., United*

-17-

*States v. Cubillos*, 474 F.3d 1114 (8th Cir. 2007); *United States v. Ray*, 35 F.3d 354 (8th Cir. 1994).

In light of such facts and Eighth Circuit case law, it would have been futile for Holley's counsel to seek a downward adjustment under U.S.S.G. § 3B1.2 as a minor or minimal participant in the offense. It cannot be ineffective assistance not to raise a meritless argument. *Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

### 3. Drug Treatment Plan; Protected Information; All Sentencing Arguments

Holley asserts that her counsel "[f]ailed to present a FULLY developed plan for DRUG TREATMENT even though Ms. Holley researched a facility with Federal Funding and gave the information to her attorney," "[f]ailed to ensure PROTECTED INFORMATION was not used to calculate Ms. Holley's guideline," and "[f]ailed to raise ALL sentencing arguments." (ECF No. 282, p. 7). Holley does not provide any facts to support these specious arguments.

Holley does not, for example, state what federally funded drug treatment program she told her counsel about, whether she was eligible for admission into the program, or how presentation of such a drug treatment plan could have affected her sentence. Comstock had discussed the issue of drug treatment, specifically RDAP, with Holley on numerous occasions, and Comstock confirmed, during sentencing, that an 18-month sentence was insufficient for an RDAP recommendation from the Court. (ECF No. 300-1, ¶ 13; ECF No. 289, p. 14).

Holley similarly fails to state what "protected information" was used to calculate her guidelines range. The PSR shows that Holley's offense conduct, which resulted in the drug quantity attributable to her and established her Base Offense Level, was drawn not from Holley's proffer interview but from Court-authorized wire and electronic interceptions from Eric Friend's cell phone.

(ECF No. 171, ¶¶ 19-46).

Nor does Holley state what "ALL sentencing arguments" her counsel should have raised. The record shows that Comstock did raise the notion of some residential drug treatment program, but she recognized that it "may be beyond the ability of this Court to order." (ECF No. 289, p. 10). Comstock highlighted Holley's slide into drug addiction and its affects on her. (*Id*.). She also argued that Holley's limited role in the organization was primarily to fund her own drug use, and she asked for a downward variance from the advisory guidelines range or a sentence at the low end of the range. (*Id*., at p. 11). In addition to her arguments at sentencing, Comstock obtained and provided the Court with nine letters of support for Holley. (ECF No. 300-1, ¶ 10).

Comstock's efforts and arguments at sentencing were successful. The Court acknowledged Holley's previous attempts at drug rehabilitation, and "so obviously you've had some serious drug addiction problems, and I think Miss Comstock is correct," but the Court noted that the Probation Office "probably has pretty limited opportunities in providing assistance, although they do have some, and so your success in getting over your drug addiction is probably going to have to be a lot on your own initiative." (ECF No. 289, pp. 11-12). Because of Holley's history and characteristics, her acknowledgment of a drug problem and a desire to do something about it, and to avoid unwarranted sentencing disparities, the Court granted a downward variance resulting in the 18-month sentence. (*Id*., pp. 12-13). The Court also commented on the letters of support, stating that he read them and took them into account, and that they were also part of the basis for a downward variance. (*Id*., p. 14). These reasons supporting the Court's decision to grant a downward variance are also set forth in the Court's Statement of Reasons. (ECF No. 267).

Given the successful outcome at sentencing, and the vague and conclusory nature of Holley's

ineffective assistance of counsel at sentencing claims, the undersigned finds no deficient performance of counsel at sentencing, and it is recommended that Holley's third ground for relief be rejected and dismissed.

### E.  No Ineffective Assistance of Counsel Regarding an Appeal

For her final ground for relief, Holley argues that her counsel was ineffective at the appeal stage because she never counseled with Holley about an appeal, never mentioned an appeal, and did not file a notice of appeal.  (ECF No. 282, p. 8).  Holley does not, however, allege that she wanted to appeal and instructed her counsel to appeal.  This is fatal to her claim.

The *Strickland* test applies to claims, like Holley's, that counsel was constitutionally ineffective for failing to file a notice of appeal.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.  *Id*. (internal citations omitted).  This is so "because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice"; failure to do so cannot be considered a strategic decision, as "filing a notice of appeal is a purely ministerial task"; and, "the failure to file reflects inattention to the defendant's wishes."  *Id*.  As for prejudice, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal."  *Id*. at 484.  Thus, an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance of counsel entitling a petitioner to § 2255 relief, with no inquiry into prejudice or likely success on appeal being necessary.  *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (citing *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000) and *Roe v. Flores-*

-20-

*Ortega*, 528 U.S. at 478).

For such a claim to succeed, "the defendant must show that he manifestly instructed his counsel to file an appeal." *Walking Eagle*, 742 F.3d at 1082 (internal quotation and citation omitted). "A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Id*.

A review of Holley's § 2255 Motion and supporting documents makes it clear that Holley never instructed Comstock to file an appeal. Instead, Holley alleges only that an appeal was not discussed with her; that she was never told the "pros and cons" of an appeal; that she was never told of the time frame within which to file an appeal; and, that if her counsel "somehow FORGOT to mention or discuss an appeal, in an abundance of caution she should have filed a NOTICE OF APPEAL." (ECF No. 282, pp. 8, 14). In an Emergency Motion for Evidentiary Hearing, Holley asks the Court to grant an evidentiary hearing "to determine if movant *would have wanted to appeal* her conviction and sentence." (ECF No. 295, p.1) (Emphasis added). These allegations fall well short of *Walking Eagle's* requirement that a defendant must show that she manifestly instructed her counsel to file an appeal.

In contrast, Comstock states in her Affidavit that following the sentencing and before Holley's departure from the courtroom they "discussed the fact that her sentence of imprisonment was significantly lower than anticipated; that she was fortunate to have received from the Court both a downward departure and a downward variance; and that given the sentence, there was no basis for filing an appeal." (ECF No. 300-1, ¶ 15). Comstock also states that Holley agreed that she had received an unexpectedly lesser term of imprisonment, stating "Right, why in the world would I

appeal?" (*Id*.).

In the absence of proof, or even an allegation, to the contrary, the undersigned finds Comstock's account of events to be more credible than Holley's bare assertions. This finding is further supported by consideration of Holley's allegation that she was never informed of the time frame for filing an appeal, when the transcript of the sentencing hearing plainly shows that the Court informed Holley of her appellate rights, including the time frame for filing an appeal. (ECF No. 289, p. 15).

Accordingly, it is recommended that Holley's fourth ground for relief be denied and dismissed.

### F. No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen*, 114 F.3d at 703 (quoting from *Voytik*, 778 F.2d at 1308). Such are the circumstances in this case. Accordingly, the undersigned recommends the summary dismissal of Holley's § 2255 Motion without an evidentiary hearing.

### G. No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C. § 2253 only if the applicant has made a substantial showing of the denial of a constitutional right. A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *Slack v. McDaniel*, 529 U.S. 473 (2000).

-22-

Holley has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III.  Conclusion

For the reasons and upon the authorities discussed above, it is recommended that Holley's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 282) be **DISMISSED with PREJUDICE**.  It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 31st day of October 2018.

/s/ *Mark E. Ford*

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE